1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           CENTRAL DISTRICT OF CALIFORNIA

10   GRACIELA HERNANDEZ ALCALA,        )   Case No. ED CV 14-526-PJW
                                       )
11                  Plaintiff,         )
                                       )   MEMORANDUM OPINION AND ORDER
12           v.                        )
                                       )
13   CAROLYN W. COLVIN,                )
     ACTING COMMISSIONER OF THE        )
14   SOCIAL SECURITY ADMINISTRATION,   )
                                       )
15                  Defendant.         )
     _____ )
16

17                                     I.

18                               INTRODUCTION

19       Plaintiff appeals a decision by Defendant Social Security

20   Administration ("the Agency"), denying her applications for Disability

21   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

22   She claims that the Administrative Law Judge ("ALJ") erred when he

23   rejected her treating psychologist's opinion, found that she was not

24   credible, and concluded that she could perform various jobs.  For the

25   reasons explained below, the Court concludes that the ALJ did not err.

26

27

28

II.

SUMMARY OF PROCEEDINGS

In June 2011, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since February 27, 2010, due to a combination of impairments, including high blood pressure, diabetes, and depression. (Administrative Record ("AR") 32-39, 100, 117, 168-81.) After her applications were denied initially and on reconsideration, she requested and was granted a hearing before an ALJ. (AR 98-103, 110-24.) On October 4, 2012, she appeared with counsel and testified at the hearing. (AR 24-48.) On December 4, 2012, the ALJ issued a decision denying the applications. (AR 10-19.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-6.) This action followed.

III.

DISCUSSION

A.   The ALJ's Credibility Determination

Plaintiff testified at the administrative hearing that she suffered from episodes of dizziness, had gained weight over the last year, was unable to perform various daily activities, had blurred vision, and needed to lie down for four to five hours a day. (AR 32-40.) The ALJ rejected this testimony because he found that it was inconsistent with statements she had made to her doctors and because there was no medical basis for her claim that she had to lie down four to five hours a day. (AR 17.) Plaintiff contends that these reasons are not clear and convincing reasons for rejecting her testimony. (Joint Stip. at 13-15.) For the following reasons, the Court finds that they are.

2

1    ALJs are tasked with judging the credibility of witnesses,
2  including the claimants.  In evaluating testimony, they employ
3  ordinary credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d
4  1273, 1284 (9th Cir. 1996).  Where a claimant has produced objective
5  medical evidence of an impairment which could reasonably be expected
6  to produce the symptoms alleged and there is no evidence of
7  malingering, the ALJ can only reject the testimony for specific,
8  clear, and convincing reasons, *id.* at 1283-84, that are supported by
9  substantial evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,
10  959 (9th Cir. 2002).

11    The record supports the ALJ's finding that Plaintiff's testimony
12  was inconsistent with the record.  For example, she testified that she
13  weighed 195 pounds at the time of the hearing in October 2012 and had
14  gained 11 pounds over the last year.  (AR 35.)  The medical records
15  contradict that testimony.  They establish that during the year before
16  the hearing she weighed between 211 and 220 pounds.  (AR 385, 396,
17  398, 406.)  Thus, she had lost weight at the time of the hearing, not
18  gained it.

19    During this same period, Plaintiff was telling her treating
20  doctor that she was doing relatively well.  For example, in June 2012,
21  she told her doctor that her health "is generally good" and denied,
22  among other things, fatigue and sleep disturbance.  (AR 408.)  At the
23  hearing four months later, however, she testified that her body hurt
24  so much that she had to lie down for four or five hours a day.  (AR
25  36-37.)  This was obviously inconsistent with her statements to her
26  treating doctor and, as the ALJ noted, there is no evidence in the
27  record to support a medical basis for her having to lie down for four
28  hours every day.

3

1    The ALJ was free to focus on these contradictions in evaluating
2  Plaintiff's testimony.  *Smolen*, 80 F.3d at 1284 (explaining ALJs are
3  entitled to rely on ordinary credibility evaluation techniques,
4  including a claimant's prior inconsistent statements concerning his
5  symptoms, in evaluating his credibility).  Clearly, her testimony at
6  the administrative hearing--that she was doing poorly--was
7  qualitatively different from what she told her doctor in the months
8  leading up to the administrative hearing--that she was doing
9  relatively well.  And, though her testimony that she had gained weight
10  over the proceeding year was not so critical in and of itself, it was
11  emblematic of the fact that she was exaggerating her condition to
12  appear more impaired than she was.  As such, the ALJ did not err in
13  concluding that she was not credible.

14    Plaintiff argues that the ALJ overlooked her son's written
15  questionnaire in which he, like Plaintiff had done, chronicled her
16  many difficulties.  (Joint Stip. at 15.)  This was a mistake on the
17  ALJ's part.  He should have noted the questionnaire and set forth his
18  reasons for discounting it.  The Court does not find, however, that
19  this failure mandates reversal.  Clearly, the son's submission, which
20  was filled out on the same day as Plaintiff's, was, in all material
21  respects, identical to Plaintiff's submission as well as her testimony
22  at the administrative hearing.  (AR 195-202, 210-17.)  The ALJ
23  properly rejected Plaintiff's testimony, setting forth clear and
24  convincing reasons for doing so.  In the context of this case, the
25  Court finds that those reasons were sufficient to explain away the
26  son's statements, too.  *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th
27  Cir. 2012); *Valentine v. Comm'r Soc. Security*, 574 F.3d 685, 694 (9th
28  Cir. 2009).

4

1          B.    The Treating Psychologist's Opinion

2          Plaintiff contends that the ALJ erred when he rejected her

3    treating psychologist's opinion and accepted, instead, the opinion of

4    the examining psychiatrist.  (Joint Stip. at 6-8.)  For the following

5    reasons, the Court finds that the ALJ did not err here.

6          It is the province of the ALJ to resolve conflicts in the medical

7    evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

8    Generally speaking, three types of doctors supply that evidence:

9    treating doctors, examining doctors, and reviewing doctors.  All other

10   things being equal, treating doctors are entitled to the greatest

11   weight because they are hired to cure and have more opportunity to

12   know and observe the patient.  *Id.* at 1041; *see also* 20 C.F.R.

13   416.927(d)(2) ("Generally, we give more weight to opinions from your

14   treating sources, since these sources are likely to be the medical

15   professionals most able to provide a detailed, longitudinal picture of

16   your medical impairment(s) and may bring a unique perspective to the

17   medical evidence that cannot be obtained from the objective medical

18   findings alone or from reports of individual examinations").

19   Examining doctors are next, followed by reviewing doctors.  *See Lester*

20   *v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  ALJs, however, are

21   not required to accept the opinion of any doctor and, where the

22   opinion is contradicted, may reject it for specific and legitimate

23   reasons that are supported by substantial evidence in the record.  *Id.*

24   at 830.

25         Prior to the administrative hearing, Plaintiff submitted a one-

26   page letter/report from her treating psychologist in which he

27   summarized her complaints and his analysis of them.  (AR 356.)  He

28   diagnosed her with post-traumatic stress disorder ("PTSD"), which he

believed was triggered by her being laid off from her job.  (AR 356.)
He did not, however, attempt to set forth what, if any, limitations
this condition caused.  (AR 356.)  Nor did he include any treatment
notes.

The ALJ complained to Plaintiff's counsel more than once at the
hearing that the treating psychologist's letter was conclusory and
that the doctor had not submitted any treatment notes to support his
opinion.  (AR 31, 40.)  Plaintiff's counsel acknowledged this problem
and agreed to submit the records after the hearing.  (AR 31.)  But
Plaintiff and/or her counsel never submitted any treatment notes.
Instead, they submitted an updated version of the treating
psychologist's original letter/report, which contained an additional
paragraph summarizing the doctor's thoughts since the earlier
letter/report.  (AR 518-19.)

The ALJ rejected this opinion because it was conclusory and was
not supported by any treatment notes or by any other doctor.  (AR 17.)
He accepted, instead, the examining psychiatrist's opinion that
Plaintiff's psychological ailments would not prevent her from working.
(AR 13.)  Plaintiff argues that the ALJ erred in doing so.  That
argument is rejected.

Doctors are not empowered to determine whether a claimant is
disabled under Social Security law.  *See* Social Security Ruling 96-5p
(explaining medical opinion that claimant is disabled, "even when
offered by a treating source, can never be entitled to controlling
weight or given special significance").  Only an ALJ can do that.
Doctors are called upon to offer opinions as to a claimant's medical
condition so that an ALJ can decide if he or she is disabled.  Often,
as is the case here, the doctors' opinions are in conflict with one

6

another and the ALJ is required to decide which opinion to accept and which to reject.  In doing so, the ALJ must necessarily evaluate the strength of each doctor's opinion.

The strength of a doctor's opinion comes in large measure from the data, records, and evidence that he or she relied on in rendering the opinion.  For treating doctors, this is usually found in the doctor's treatment notes, which typically consist of a chronological series of entries setting out the patient's complaints, how the doctor treated those complaints, and how the patient responded to the treatment.  Often, the results of tests that have been performed are also included in the treatment records.

There are still no treatment notes from the treating psychologist in this record, despite the fact that the ALJ pointed this out to Plaintiff's counsel at the hearing--the same counsel who represents Plaintiff in this appeal--and counsel told the ALJ that he would follow up and submit the records after the hearing.  (AR 31.)  That was more than two years ago.  The Court presumes that the reason counsel has never produced any treatment notes is because they do not exist.

In the absence of any treating records, all that exists is the doctor's conclusory report that Plaintiff suffers from PTSD, which the doctor believes was triggered by her being laid off from her job.  (AR 356.)  Like the ALJ, the Court questions the validity of this opinion.  Because there are no records, it is unknown whether the doctor performed any tests on Plaintiff or reviewed any medical records.  Nor is it clear what the basis for his opinion is.  Though the doctor notes that he saw Plaintiff twice monthly over an 18-month period, he

7

does not say how long the sessions were or what took place during them. (AR 356, 518-19.)

It appears that the opinion is based solely on Plaintiff's claims of what was wrong with her and what she believed was causing her symptoms, which the doctor apparently accepted at face value. His wholesale acceptance of her statements in formulating his opinion is particularly problematic in this case because the ALJ found that she was not credible. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (affirming ALJ's rejection of treating doctor's opinion, which was primarily based on claimant's statements to doctor, where claimant was found to be incredible). The treating doctor's failure to provide his treatment notes and any test findings severely undermines his opinion and supports the ALJ's decision to reject it. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming ALJ's rejection of treating doctor's opinion because it was unsupported by rationale, treatment notes, and/or objective medical findings).

In contrast to the treating doctor, the examining psychiatrist laid out exactly what he relied on in formulating his opinion. (AR 253-56.) He took a detailed history from Plaintiff and conducted a mental status examination, employing a series of tests that are routinely seen by the Court in these types of cases. (AR 255.)

The ALJ was charged with resolving the contradictory opinions in this case. He accepted the one that was supported by the record and rejected the one with little or no support. The Court cannot say that he erred in doing so. For that reason, his decision will be upheld.

1

      C.   <u>Plaintiff's Eye Impairment</u>

2       Plaintiff complains that the ALJ overlooked her diabetic

3  retinopathy when listing her severe impairments. (Joint Stip. at 4-

4  5.) She believes that this condition is responsible for her visual

5  acuity being 20/30 and 20/40.

6       The Agency disagrees. It points out that the testing that

7  revealed her visual acuity at 20/30 and 20/40 was done with only one

8  eye open at a time and that when Plaintiff was tested with both eyes

9  open her vision was 20/25 in both eyes. (AR 248, 412.) It points out

10  further that no doctor ever suggested that her vision impacted her

11  ability to work and that, in fact, the doctors who examined her eyes

12  consistently noted that they were normal. (AR 303, 305, 310, 334,

13  339, 342, 344, 362, 370, 406, 408.)

14       Here, again, the Court sides with the Agency. The medical record

15  does not establish that Plaintiff's vision problems impacted her

16  ability to work. In fact, her visual acuity (20/25) at 40+ years of

17  age appears to be nearly perfect. The fact that she reportedly

18  experienced "flashes & floaters" and "blurry foggy vision" on occasion

19  does not change the analysis nor did any doctor opine that it did.

20  For this reason, her argument that the ALJ should have included

21  retinopathy as a severe impairment is rejected.

22      D.   <u>The Residual Functional Capacity Determination</u>

23       Finally, Plaintiff argues that the ALJ erred in establishing her

24  residual functional capacity and, consequently, in formulating the

25  hypothetical questions to the vocational expert. There is no merit to

26  this argument.

27       Plaintiff contends that the ALJ erred when he failed to include

28  visual limitations stemming from her retinopathy in the residual

functional capacity determination.  As the Court explained above, however, the ALJ did not err in failing to find that her retinopathy or any problems with her vision caused by it impacted her ability to work.  Thus, the ALJ did not need to include anything in the residual functional capacity finding or the hypothetical question to the vocational expert to account for it.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (explaining ALJ only required to include limitations in residual functional capacity and hypothetical question to vocational expert that are supported by substantial evidence in the record).

Similarly, Plaintiff complains that the ALJ failed to take into account her testimony that she suffered from headaches and blurry vision and was required to lie down for four to five hours a day. (Joint Stip. at 20.)  But the evidence of these ailments came from Petitioner's testimony, which the ALJ found was incredible.  He was not, therefore, required to include them in the residual functional capacity finding or the hypothetical question to the vocational expert.  *Osenbrock*, 240 F.3d at 1163-64.

The ALJ limited Plaintiff to simple and routine tasks.  (AR 14.) The vocational expert determined that, despite this limitation, Plaintiff could perform the job of electronics worker.  (AR 44-46.) Plaintiff argues that she cannot perform this job because it involves reasoning level two, which is beyond simple, routine work.  The law does not support this argument.  An ability to perform simple, repetitive tasks is consistent with level two reasoning.  *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

10

Plaintiff also claims that she cannot perform the job of electronics worker because it is light work and, therefore, requires standing for more than two hours a day.  Plaintiff is mistaken.  The vocational expert testified that the reason that this job is categorized as light work, instead of sedentary work, is because of the lifting requirement (up to 20 pounds), not because of the standing required.  (AR 46.)  Thus, because Plaintiff can lift 20 pounds, she can perform this job despite her limitation on standing.

The ALJ limited Plaintiff to standing for up to two hours a day. (AR 14.)  The vocational expert testified that Plaintiff could not perform the job of house cleaner as a result.  (AR 46.)  The ALJ apparently disregarded this testimony but failed to explain why.  (AR 18.)  This was error.

In the end, even with the ALJ's erroneous finding that Plaintiff could work as a house cleaner, there are still enough jobs in the national and local economy identified by the vocational expert that she can perform—electronics worker, 5,000 locally and 80,000 nationally, and assembler, 1,300 locally and 21,000 nationally (AR 44-45)—to support the ALJ's finding that she is not disabled.

IV.

CONCLUSION

For these reasons, the ALJ's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: March 4, 2015

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\ALCALA, 526\Memorandum Opinion and Order.wpd